IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MOUNIA ELYAZIDI

      v.                      :   Civil Action No. DKC 13-2204

SUNTRUST BANK, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution are motions to dismiss filed by Defendants SunTrust Bank ("SunTrust") (ECF No. 17) and Mitchell Rubenstein & Associates, P.C. ("MRA") (ECF No. 18), as well as a motion for sanctions filed by SunTrust (ECF No. 24). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motions to dismiss will be granted and the motion for sanctions will be denied.

**I.  Background**

    **A.  Factual Background**

On June 12, 2012, SunTrust, through MRA, its counsel, filed a collection action against Plaintiff Mounia Elyazidi ("Plaintiff" or "Ms. Elyazidi") in the General District Court of Fairfax County, Virginia, to recover "an overdraft that resulted from cashing a check on . . . a consumer checking account[.]" (ECF No. 16 ¶ 11). The state court complaint, known as a

"warrant in debt," recited that Ms. Elyazidi owed SunTrust "a debt in the sum of $9490.82 net of any credits, with interest at 6.0000% from [the] date of 10/14/2010 until paid, $58.00 costs[,] and $2372.71 attorney's fees with the basis of this claim being . . . [c]ontract." (ECF No. 18-2, at 1).[1] Attached to the warrant in debt was an "Affidavit of Account," in which a SunTrust representative asserted that "[t]he amount of [$9,490.82] plus reasonable attorney fees of 25% and the costs of this proceeding is justly due and owing from debt to SunTrust Bank pursuant to the attached copies of the debt[.]" (*Id*. at 2). Also included was SunTrust's "Rules and Regulations for Deposit Accounts," which recited, in relevant part:

---

[1] In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Generally, the court's review of a motion to dismiss under Rule 12(b)(6) is limited to the well-pleaded allegations of the complaint, but "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Here, the state court records attached to MRA's motion papers, are integral to, and explicitly relied on in, Plaintiff's amended complaint and the authenticity of these documents is not challenged by Plaintiff. Furthermore, "a federal court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

>           [Ms. Elyazidi is] liable for all amounts
>           charged to [her] Account, whether by offset,
>           overdraft, lien or fee.    If [SunTrust]
>           take[s] court action or commence[s] an
>           arbitration proceeding against [her] to
>           collect such amounts, or if [she] elect[s]
>           arbitration of a collection action [SunTrust
>           has] brought against [her] in court, [she]
>           will also be liable for court or arbitration
>           costs, other charges or fees, and attorney's
>           fees of up to 25 percent, or an amount as
>           permitted by law, of the amount owed to
>           [SunTrust].

(*Id.* at 27).  SunTrust additionally attached a "Personal Account
Signature Card," in which Ms. Elyazidi agreed "to be bound by
the terms and conditions set forth in the Bank's Rules and
Regulations for Deposit Accounts" (*id.* at 9); account statements
showing a negative balance in the amount SunTrust sought to
recover (*id.* at 10-11); and a demand for repayment of the
overdraft amount (*id.* at 7).

     In support of a claim for attorneys' fees, an MRA attorney
executed an affidavit in which she averred, as relevant here,
that SunTrust was "entitled to indemnification for 25% to the
contract, note or other instrument of agreement executed between
the parties"; that she "ha[d] a billable rate of $250.00 per
hour and ha[d] expended approximately 1 hour in preparation of
the Warrant in Debt/Motion for Judgment filed herein"; that she
would "require an additional 3 hours for Court appearances and
travel"; and that she "anticipate[d] at least 20 additional
hours in order to satisfy [the expected] judgment by execution,

based upon similar cases and known asset information." (*Id.* at 3). SunTrust's counsel "request[ed] an award of 25%" of the principal debt "as a just and reasonable fee, which [was] equal to or less than the actual arrangement with [SunTrust] in this case." (*Id.*).

The case proceeded to a bench trial on December 19, 2012. At the outset of the trial, Ms. Elyazidi's counsel, Ernest P. Francis, orally moved for summary judgment on the grounds that SunTrust failed to redact his client's social security number from account statements attached to a bill of particulars and that the same bill of particulars was filed two days late. (ECF No. 18-3, at 3-5). The court asked Mr. Francis to make a showing of prejudice, which he failed to do, and suggested that SunTrust redact the social security number from the exhibits. (*Id.* at 5). Counsel for SunTrust agreed to do so, and Mr. Francis said nothing further. (*Id.*). Thereafter, he waived an opening statement (*id.* at 6), declined to cross-examine SunTrust's only witness (*id.* at 69), and presented no evidence (*id.* at 69-70) or closing argument (*id.* at 73). At the conclusion of the trial, judgment was entered in favor of SunTrust for $9,490.82, the amount sought in the warrant in debt. (*Id.* at 78).

At a separate hearing on attorneys' fees, held February 27, 2013, counsel for SunTrust submitted a supplemental affidavit,

asserting that she had "expended approximately 13.9 hours" on the case and providing a detailed description of her work, broken down by task, showing a total billable amount of $4,025.00. (ECF No. 16-1, at 2). Like the affidavit attached to the warrant in debt, SunTrust's counsel averred in the supplemental affidavit that she "anticipate[d] at least 20 additional hours in order to satisfy [SunTrust's] judgment by execution, based upon similar cases and known asset information" and "request[ed] an award of 25% percent as a just and reasonable fee[.]" (*Id.* at 3). After the attorney for SunTrust testified in support of her request, Mr. Francis argued at length that "a contractual attorney's fee provision is a contract of indemnity" and that there had been "no showing that [SunTrust] actually paid anything . . . [s]o there's nothing to be indemnified for." (ECF No. 18-4, at 12). The court disagreed and awarded "fees in the amount requested" of $2,372.71 – *i.e.*, 25% of the $9,490.82 principal. (*Id.* at 20).

### B. Procedural Background

Plaintiff, again represented by Mr. Francis, commenced the instant action on June 12, 2013, by filing a complaint against SunTrust and MRA in the Circuit Court for Montgomery County, Maryland, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and analogous state law related to alleged false statements and other

misconduct by Defendants in the Virginia state court. (ECF No. 2). MRA was served on July 12, 2013, and, with the consent of SunTrust, timely removed on the basis of federal question and supplemental jurisdiction. (ECF No. 1). When both defendants filed motions to dismiss (ECF Nos. 6, 11), Plaintiff responded by filing an amended complaint, asserting additional claims.[2]

On August 23, SunTrust renewed its prior motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (ECF No. 17). Six days later, MRA filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 18). Plaintiff opposed both motions (ECF Nos. 19, 27) and MRA filed a reply (ECF No. 28). On October 2, SunTrust filed a motion for sanctions. (ECF No. 24). Plaintiff was not directed to respond.

## II. Motions to Dismiss

### A. Standards of Review

The arguments raised by Defendants in their motions to dismiss implicate different standards of review. MRA's motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the

---

[2] The filing of the amended complaint rendered moot the initial motions to dismiss. Accordingly, those motions will be denied.

case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n. 4 (4th Cir. 1999) (quoting 2 James Wm. Moore, et al., *Moore's Federal Practice* § 12.30[1] (3d ed. 1998)). The Plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

Both defendants have moved to dismiss pursuant to Rule 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B. Analysis**

**1. Subject Matter Jurisdiction**

Initially, MRA moves to dismiss the FDCPA claims alleged in counts three, four, and five of Plaintiff's amended complaint for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the *Rooker-Feldman* doctrine is jurisdictional, [courts] are obliged to address it before proceeding further in [the] analysis"). In count three, Plaintiff alleges that MRA's statements in various state court documents that Plaintiff "owed twenty[-five] percent of the

overdraft as attorney's fees," that "SunTrust was entitled to recover" that amount, and that the attorney "anticipated 20 [additional billable] hours to satisfy [SunTrust's] judgment by execution" constitute the use of "false, deceptive, or misleading means or representation[s] in connection with the collection of a debt," in violation of 15 U.S.C. § 1692e(2). (*Id.* ¶¶ 45-48). In count four, she alleges that MRA's "prosecution of a legal action against Plaintiff to recover attorney's fees for services not performed represent[s] the collection of an amount that was neither expressly authorized by the agreement creating the debt nor permitted by applicable law," in violation of § 1692f(1), because "neither the agreement nor applicable law permit[s] recovery of attorney's fees for services not performed." (*Id.* at ¶ 50). In count five, Plaintiff asserts that MRA's use of "perjured" affidavits "represents an unfair and unconscionable means to collect or attempt to collect a debt," in violation of § 1692f(1). (*Id.* at ¶ 52).

Observing that "the General District Court judgment included the 25% attorneys' fees requested by SunTrust in the Warrant in Debt," MRA argues that Plaintiff's success on the merits of these claims "would necessitate a finding that the state court wrongly decided the issues before it." (ECF No. 18-1, at 12 (internal marks and citation omitted)). It contends

9

that the court is prohibited from doing so under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine bars lower federal courts from considering "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine serves to bar "not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). "[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006).

While these counts are beset with other problems, subject matter jurisdiction is not lacking to consider them. MRA's argument to the contrary essentially relies on the expansive view of the *Rooker-Feldman* doctrine applied by the Fourth Circuit in cases pre-dating the Supreme Court's decision in

*Exxon*.  In *Barefoot v. City of Wilmington*, 306 F.3d 113, 120 (4th Cir. 2002), for example, the court held, in relevant part, that "[a] federal claim is 'inextricably intertwined' with a state court decision if success on the federal claim depends upon a determination that the state court wrongly decided the issues before it."  (Internal marks and citation omitted).  This is precisely what MRA argues here – namely, that Plaintiff's success on three FDCPA claims necessitates a finding that false representations were made and, consequently, that the state court wrongly credited those representations.

In *Davani*, however, the court recognized that *Barefoot* was among the cases employing an overly "broad interpretation" of the doctrine prior to *Exxon*:

> The plaintiffs in *Rooker* and *Feldman* sought redress for an injury allegedly caused by the state-court decision itself — in *Rooker*, the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman*, the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot*, by contrast, we extended the *Rooker–Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's* actions. What is more, this expansive view of the *Rooker–Feldman* doctrine carried with it implications for *Feldman*'s "inextricably intertwined" language. To wit, by shifting the focus from an examination of whether the plaintiff challenges the state-court decision itself to whether the plaintiff challenges the defendant's actions, our

> interpretation of the *Rooker–Feldman*
> doctrine became, in essence, a
> jurisdictional doctrine of res judicata:
> state-court losers became precluded from
> raising claims in federal district court
> that they had either already raised before
> the state court or that were so
> "inextricably intertwined" with the claims
> they presented to the state court that the
> federal claims could have been raised in the
> state proceedings.

*Davani*, 434 F.3d at 717-18 (emphasis in original). "Under *Exxon*," the court explained, "*Feldman*'s 'inextricably intertwined' language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision[.]" *Id.* at 719.

As the Seventh Circuit explained in *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995):

> Were [the plaintiff] merely claiming that
> the decision of the state court was
> incorrect, even that it denied him some
> constitutional right, the doctrine would
> indeed bar his claim. But if he claims, as
> he does, that people involved in the
> decision violated some independent right of
> his . . . then he can, without being blocked
> by the *Rooker-Feldman* doctrine, sue to
> vindicate that right and show as part of his
> claim for damages that the violation caused
> the decision to be adverse to him and thus
> did him harm.

Here, the thrust of the challenged claims is that MRA violated the FDCPA by asserting that it was entitled to attorneys' fees that had not yet been earned.  This is not a challenge to the propriety of the court's order granting a fee award, but to the defendant's conduct in the state court litigation.  Accordingly, the *Rooker-Feldman* doctrine does not present a jurisdictional bar.

### 2.  Failure to State a Claim

MRS alternatively contends that Plaintiff has failed to state a claim for relief under the FDCPA, which protects consumers from "abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004).  More specifically, the FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  To state a sufficient claim for relief under the FDCPA, a plaintiff must assert facts that, if proven, would show (1) that she has been the object of collection activity arising from consumer debt, (2) that the defendant is a debt collector, as defined under the FDCPA, and (3) that the defendant has engaged in a prohibited act or omission.  *See Dikun v. Streich*, 369 F.Supp.2d 781, 784

(E.D.Va. 2005) (citing *Fuller v. Becker & Poliakoff*, 192
F.Supp.2d 1361, 1366 (M.D.Fla. 2002)).

There appears to be no dispute that Plaintiff was the
subject of a collection activity arising from a consumer debt
and that MRA qualifies as a "debt collector," as that term is
defined under the FDCPA. *See Sayyed v. Wolpoff & Abramson*, 485
F.3d 226, 229 (4th Cir. 2007) ("The Act applies to law firms that
constitute debt collectors, even where their debt-collecting
activity is litigation."); *see also Heintz v. Jenkins*, 514 U.S.
291, 294 (1995) ("In ordinary English, a lawyer who regularly
tries to obtain payment of consumer debts through legal
proceedings is a lawyer who regularly 'attempts' to 'collect'
those consumer debts," as defined under 15 U.S.C. § 1692a(6)).
The critical inquiry, therefore, is whether MRA engaged in a
prohibited act or omission.

The alleged prohibited acts or omissions at issue in counts
three, four, and five are set forth at 15 U.S.C. §§ 1692e(2) and
1692f(1).  Pursuant to § 1692e(2):

> A debt collector may not use any false,
> deceptive, or misleading representation or
> means in connection with the collection of
> any debt.  Without limiting the general
> application of the foregoing, the following
> conduct is a violation of this section: . .
> . The false representation of --
>
> (A) the character, amount, or legal
> status of any debt; or

(B) any services rendered or
compensation which may be lawfully received
by any debt collector for the collection of
a debt.

Section 1692f(1), in turn, prohibits a "debt collector" from
collection of "any amount (including any interest, fee, charge,
or expense incidental to the principal obligation) unless such
amount is expressly authorized by the agreement creating the
debt or permitted by law."

There can be little doubt that the assertions in documents
attached to the warrant in debt as to the amount owed as
attorneys' fees were merely estimates of what would be due at
the conclusion of the case. Indeed, the warrant in debt itself
is a form complaint published by the Virginia judiciary that
requires the aggrieved party to give notice of the total amount
sought, including attorneys' fees, at the time of filing. *See*
http://www.courts.state.va.us/forms/district/dc412.pdf (last
accessed Feb. 28, 2014). Insofar as the total fee amount
necessarily has not accrued at the time the warrant is filed,
the form appears to call for an estimate. Thus, Plaintiff
complains, in effect, that MRA complied with the procedure
established by the Virginia court system.

There is no dispute that the underlying service agreement
provided that a fee of up to twenty-five percent of the
principal debt could be recovered as attorneys' fees; that the

total lodestar amount at the conclusion of the case was in excess of the percentage that was awarded; and Plaintiff does not argue that the MRA attorney misrepresented the hours she actually worked in either the original or supplemental affidavits. To the extent that the representations in the state court filings were attributable to MRA – rather than SunTrust – and that they were directed to Plaintiff – rather than the court – they were not false or misleading in any material way. *See Lembach v. Bierman*, 528 Fed.Appx. 297, 302 (4th Cir. 2013) ("a statement must be materially false or misleading to violate the FDCPA"); *Sayyed v. Wolpoff & Abramson, LLP*, 733 F.Supp.2d 635, 648 (D.Md. 2010) (finding that a state court fee petition was "a request directed to the court, not a communication directed to the debtor, and certainly not a misrepresentation"); *Hart v. Pacific Rehab of Maryland, P.A.*, Civ. No. ELH-12-2608, 2013 WL 5212309, at *23 (D.Md. Sept. 13, 2013) ("like the request for attorney's fees directed to the court in *Sayyed*, the State plaintiff, through counsel, made a request to the court [for pre-judgment interest that] . . . was not actionable to the debtor under the FDCPA.").

In counts six and seven, Plaintiff contends that MRA's failure to redact her social security number from documents attached to a bill of particulars and the late filing of the bill of particulars constitute "unfair and unconscionable" debt

collection practices in violation of 15 U.S.C. § 1692f. According to Plaintiff, "[t]he disclosure of a debtor's social security number by a debt collector . . . is a means to extort payment of a debt by a consumer [because] . . . the consumer will simply pay the debt rather than risk identity theft through the public disclosure of his or her social security number." (ECF No. 16 ¶ 58). The transcript of the state court trial, however, reflects that the disclosure was likely an oversight that was cured by redaction of the relevant documents, and Plaintiff's allegation to the contrary is wholly conclusory. *See United Black Firefighters*, 604 F.2d at 847 ("conclusory allegations . . . not supported by any reference to particular acts, practices, or policies" are insufficient "to state a claim under Rule 8(a)(2)"); *see also Pittenger v. John Soliday Financial Group, LLC*, No. 1:09-CV-00563, 2010 WL 1856224, at *4 (N.D.Ohio May 10, 2010) ("The defendants' disclosure of Pittenger's social security number . . . in an exhibit that was relevant to a legitimate lawsuit is not the type of unfair, deceptive, or unconscionable act or practice contemplated by [Ohio state consumer protection law]"); *Feltman v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 06 C 2379, 2008 WL 5211024, at *5 (N.D.Ill. Dec. 11, 2008) (filing of exhibits in state court "is simply not the type of behavior contemplated by [FDCPA] § 1692d"). Under Plaintiff's theory, moreover, it is

17

the threat of disclosure that essentially extorts payment from the consumer. That sinister motive would appear not to be present where, as here, the disclosure was made without any prior threat being communicated. With respect to the late filing of the bill of particulars, Plaintiff's assertion that this amounts to an unfair debt collection practice is simply a conclusory allegation untethered to any factual predicate. Accordingly, Plaintiff's FDCPA claims against MRA are subject to dismissal.[3]

### 3. Supplemental Claims

Because subject matter jurisdiction is based on the FDCPA claims, which will be dismissed, and the requirements for diversity jurisdiction are not satisfied, questions arise as to (1) whether the court may exercise supplemental jurisdiction over the remaining state law claims, and (2) if so, whether it should. Pursuant to 28 U.S.C. § 1367(a), the court may exercise supplemental jurisdiction over "all [nonfederal] claims that are so related to [federal] claims in the action . . . that they form part of the same case or controversy[.]" Here, the remaining state law claims allege violations of state consumer protection laws and are sufficiently related to the federal

---

[3] Because the amended complaint fails to state a claim upon which relief may be granted, the court does not reach MRA's argument that certain claims are barred under the doctrine of *res judicata*.

claims such that the court may exercise supplemental jurisdiction over them. *See White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993) (supplemental claims "need only revolve around a central fact pattern" shared with the federal claim). Still, the court "may decline to exercise supplemental jurisdiction . . . [if it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise discretion to consider supplemental claims, courts generally look to factors such as the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Ultimately, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id*. (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350). In the interest of judicial economy, the court will exercise supplemental jurisdiction over the remaining state law claims.

In count one of the amended complaint, Plaintiff alleges, as to both defendants, violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-202(8), related alleged misrepresentations contained in the state court

documents.  In count two, Plaintiff asserts a claim against
SunTrust for violation of the Maryland Consumer Protection Act
("MCPA"), Md. Code Ann., Com. Law § 13-408, based on the same
essential conduct.

Defendants contend that these claims are not cognizable
because "Maryland law is not applicable to the Virginia
collection action."  (ECF No. 11-1, at 3).  As the Fourth
Circuit observed in *Carolina Trucks & Equipment, Inc. v. Volvo
Trucks of North America, Inc.*, 492 F.3d 484, 489-90 (4th Cir.
2007):

> The principle that state laws may not
> generally operate extraterritorially is one
> of constitutional magnitude. One state may
> not "project its legislation" into another,
> *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S.
> 511, 521, 55 S.Ct. 497, 79 L.Ed. 1032
> (1935), as the Commerce Clause "precludes
> the application of a state statute to
> commerce that takes place wholly outside of
> the State's borders, whether or not the
> commerce has effects within the State,"
> *Healy*, 491 U.S. at 335, 109 S.Ct. 2491
> (quoting *Edgar v. MITE Corp.*, 457 U.S. 624,
> 642-43, 102 S.Ct. 2629, 73 L.Ed.2d 269
> (1982) (plurality opinion)); *see also
> Bigelow v. Virginia*, 421 U.S. 809, 822-23,
> 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) ("The
> Virginia Legislature could not have
> regulated the advertiser's activity in New
> York, and obviously could not have
> proscribed the activity in that State.").

Maryland courts have similarly recognized that, "as a general
rule, one State cannot regulate activity occurring in another
State, and that, in deference to that principle, regulatory

statutes are generally construed as not having extra-territorial effect unless a contrary legislative intent is expressly stated." *Consumer Protection Div. v. Outdoor World Corp.*, 91 Md.App. 275, 287 (1992); *see also Chairman of Bd. of Trustees v. Waldron*, 285 Md. 175, 183-84 (1979) ("unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect"). Although one state may, "through the proper regulation of activity occurring within its borders, also affect[] conduct occurring elsewhere[,] . . . [t]he issue of extra-territorial reach arises [] when the offensive nature of the communication, or the harm arising from it, depends upon or derives from conduct occurring outside the State." *Outdoor World*, 91 Md.App. at 287-88.

Here, the conduct about which Plaintiff complains occurred entirely in the Commonwealth of Virginia and Plaintiff points to no provision of the MCDCA or the MCPA indicating that the reach of those provisions extends to conduct occurring outside of Maryland. Because the statutes have no extraterritorial effect, Plaintiff's state law claims cannot be maintained.

## III. Motion for Sanctions

SunTrust has filed a Rule 11 motion for sanctions against Plaintiff, arguing that the amended complaint is frivolous and seeking an award of attorneys' fees. (ECF No. 24). "[T]he central purpose of Rule 11 is to deter baseless filings in

District Court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Under Rule 11, by presenting a pleading or written motion to the court, an attorney or unrepresented party "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading or motion is, among other things, "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and that its "allegations and other factual contentions have evidentiary support."  Fed.R.Civ.P. 11(b).

While it is clear that Plaintiff's counsel, Mr. Francis, has unsuccessfully presented similar claims in the past, *see Sayyed*, 733 F.Supp.2d 635, there is no indication that he did not believe in the merit of Plaintiff's case after reasonable investigation or that he acted with a dishonest purpose or with ill will.  Indeed, the Fourth Circuit reversed a motion to dismiss in *Sayyed*, 485 F.3d 226, finding that FDCPA violations could occur based on a law firms representations in state court litigation.  Thus, there was a basis for the attorney to believe in the merits of Plaintiff's claims.  Although the instant facts do not support Plaintiff's claims, there is a difference between a losing case and a frivolous one.  Given the high standard

required for the imposition of sanctions, and the fact that all
of Plaintiff's claims will be dismissed, the court will decline
to award sanctions.

**IV.  Conclusion**

For the foregoing reasons, the motions to dismiss will be
granted and the motion for sanctions will be denied.  A separate
order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge